ADAM WANG (STATE BAR NUMBER 201233)
LAW OFFICES OF ADAM WANG
12 South First Street, Suite 613
San Jose, CA 95113
Tel:  (408) 292-1040
Fax:  (408) 286-6619

Attorneys for Plaintiff
Vladimir A. Balarezo

UNITED STATES DISTRICT COURT

FOR DISTRICT OF NORTHERN CALIFORNIA

| | |
|---|---|
| VLADIMIR A. BALAREZO, individually and on behalf of others similarly situated<br><br>            Plaintiff,<br><br>        vs.<br><br>NTH CONNECT TELECOM INC., AND STEVEN CHEN,<br><br>            Defendants | Case No.:C07-05243 JF<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date:     February 22, 2008<br>Time:     9:00 AM<br>Judge:     Jeremy Fogel |

## I.     INTRODUCTION

The Court should take as true the matters pleaded in the Complaint, and should not consider Plaintiff's payroll statements and timecards because (i) the authenticity of these extrinsic documents are in dispute; (ii) the Complaint did not refer to nor discuss the contents of these extrinsic documents, and (iii) Plaintiff does not necessarily rely on these documents for his relief.   At this stage of litigation, Defendants have completely failed to show that Plaintiff is absolutely unable to prove his case under any circumstance.  As such, the Court should deny their motion to dismiss.

## II.     FACTUAL BACKGROUND AND NATURE OF THE SUIT

Defendant Nth Connect Telecom Inc. ("Nth Connect") is a contractor hired by ComCast to install cable signal receiving equipments at the ComCast customers' houses.  Plaintiff was employed with Nth Connect as an Installation Technician for certain period during the four years prior to the filing of the Complaint in this case.  See Balarezo Decl.,  ¶ 2.  While employed by

Nth Connect, Plaintiff's would be dispatched to the customers' houses at various specified time periods during the day to perform installations.  Id., at ¶ 3.

Plaintiff was compensated by piece for the work performed, *i.e.,* he was compensated at a specific rate for each installation he had completed.  The piece rate would vary, depending on the nature of the particular job Plaintiff was dispatched to perform.  Id., at ¶ 4.

At the end of each pay period, Nth Connect would give Plaintiff an earnings statement summarizing all the work performed during the pay period, and the amount earned for that pay period.  As such, the amount Plaintiff earned bore no relation to the hours worked during a particular pay period.  See id., at ¶ 4 and Exhibit 1 thereto.  Nor Plaintiff was ever paid according to an agreed-upon hourly rate.  Id., at ¶ 5.  Plaintiff was never paid according to the number of hours he worked, id., ¶ 6.

In processing the payroll statement, Nth Connect would arbitrarily assign Plaintiff an artificial hourly rate of $7.00, and reverse engineer the payroll calculations using the number of hours shown on his daily timecards.  As result, Plaintiff's payroll statement would show that he was paid $7.00 per hour for regular hours worked within 8 hours per day or 40 hours per week, and $10.5 per hour for hours in excess of 8 hours per day or 40 hours per week.  Such reverse-engineered hourly earnings for a particular pay period would inevitably differ from the amount actually earned by Plaintiff based on the installations he performed during that pay period.  To make up such differences, Nth Connect would list an extra amount as bonus, compensation for tolls, gas reimbursements or other expenses so that the gross amount Plaintiff received from Nth Connect per pay period as reflected on the reverse engineered payroll statement for that period would always confirm with the actual amount Plaintiff earned based on the installation work performed.  Id., at ¶¶ 7-8.  In reality, however, Plaintiff was never paid any amount to compensate for tools, gas reimbursements or other expenses in addition to what he earned based on the installations performed.  Id., at ¶ 8.

Case No.C07-5243 JF

Furthermore, during a workday, Plaintiff was required to be at the customer's house and perform the installations during the time periods specified on the ComCast orders. As result it was impossible that Plaintiff could have a fixed time period to take lunch breaks every day. The lunch breaks reflected on Plaintiff's daily time cards, which were offered by Defendants as extrinsic documents in this motion, do not reflect the reality of Plaintiff's workdays. Plaintiff put down the alleged lunch breaks on his daily timecards simply because he was told by Nth Connect management to do so. During a typical workday, Plaintiff would have to go from one work order to another, and did not have time to take 30-miniute undisturbed lunch breaks. Id., ¶ 10.

Plaintiff claims in his Complaint that he regularly worked in excess of 8 hours a day or 40 hours a week, but he was paid straightly according to his regular piece rate, and not the required one and one-half of his regular rate for his overtime hours. Plaintiff seeks, among other things, unpaid overtime.

## III.    LEGAL STANDARDS

In moving to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6), defendant bears a heavy burden. Such a motion can only be granted when the defendant establishes "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Terracom v. Valley Nat'l Bank, 49 F.3d 555, 558 (9th Cir. 1995). "On a motion to dismiss, [the court] is required to read the complaint charitably, to take all well-pleaded facts as true, and to assume that all general allegations embrace whatever specific facts might be necessary to support them", see Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994).

Generally, the scope of review on a motion to dismiss for failure to state a claim is limited to the contents of the complaint. Terracom, at 49 F.3d 558. A court may consider evidence on which the complaint "necessarily relies" if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. Marder v. Lopez, 450 F.3d 445, 448 (9th Cir. 2006).

1

2  IV.    ARGUMENTS

3        A.  THE COURT SHOULD NOT CONSIDER PLAINTIFF'S PAYROLL STATEMENTS AND
4            TIMECARDS BECAUSE THEIR AUTHENTICITY ARE BEING DISPUTED

5        The Court should not consider the Plaintiff's payroll statements and purported time cards

6  in ruling on this motion because the authenticity of these documents is being disputed.  Although

7  under limited circumstances a Court may consider an extrinsic document attached to the motion

8  to dismiss, the authenticity of such document must not be disputed. <u>Marder,</u> at 450 F.3d 448;

9  <u>accord</u> <u>Branch v. Tunnel</u>, 14 F.3d 449, 454 (9th Cir. 1994)("documents whose contents are

10  alleged in a complaint and whose authenticity no party questions, but which are not physically

11  attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss); <u>see</u>

12  <u>also</u>  Parrino v. FHP Inc., 146 F.3d 699, 706 (9th Cir. 1998) (a district court ruling on a motion to

13  dismiss may consider a document the authenticity of which is not contested, and upon which the

14  plaintiff's complaint necessarily relies).  Here, the authenticity of both Plaintiff's payroll

15  statements and time cards presented in this motion by Defendants are disputed.  As such, the

16  Court should not consider these documents in ruling on this motion.

17        Plaintiff's payroll statements presented by Defendants are result of reverse engineering

18  and do not reflect the actual terms and conditions of Plaintiff's employment.  As indicated in

19  Plaintiff's declaration, he was actually paid piece rate based on the number of installations he

20  performed.  Balarezo Decl., ¶ 4.  He was never paid according to an agreed upon hourly rate and

21  number of hours he worked.  <u>Id.,</u> at ¶ ¶ 5-6.  Plaintiff's payroll statements presented by

22  Defendants in this motion are result of some reverse-engineering process in misguided attempts

23  to avoid overtime time obligations.  <u>Id.,</u> at ¶ 7.

24        Specifically, Plaintiff claims that during a given pay period, he would earn certain

25  amount of money based on the installations he performed, and such earnings bore no relation

whatsoever to the number of hours Plaintiff worked.  For example, Exhibit 1 to Declaration of

Vladimire Balarezo shows how his earnings for the pay period from October 29 to November 11,

2006 was determined.   On Exhibit 1, at the second line from the first column, it shows that for one piece of installation named "UG New Connect", Plaintiff would be paid $18.00.  During the pay period from October 29, 2007 to November 1, 2007, Plaintiff performed one "Underground Now Connect" installation during the first week of the pay period on November 4,, 2007, and none during the second week of the pay period.  As such, Plaintiff earned $18 for the "NU New Connect" installations.  Exhibit 1 clearly shows that the total earnings of $1,199.25 were earned from various installations performed at a specific rate for each installation.  Plaintiffs' earnings bore no relations whatsoever to the number of hours he worked during the pay period.

On the other hand, however, Exhibit 2 to Declaration of Vladimire Balarezo demonstrates how Plaintiff's payroll statement for the pay period from October 29 to November 11, 2006 to was reverse-engineered to make it appear Plaintiff was paid for regular and overtime hours at an hourly rate.  First, Defendants would first make sure that the gross pay on the paycheck covering that pay period equaled the earnings Plaintiff made based on installations he performed, which was shown on Exhibit 1.  For this pay period, it was $1,199.25.  Then, Defendants would artificially assign Plaintiff an hourly rate of $7.00 per hour for regular time hours and $10,5 for overtime hours.  The payroll statement reports 80 hours regular time and 31.50 hours of overtime time, resulting in the hourly earnings of $890.75.  To make up the difference between the actual earnings shown on the Exhibit 1 based on the installations performed, and the hourly earnings based on the artificial hourly rate, the payroll statement made adjustment by listing a "bonus" of $308.50.  See Exhibit 2 to Declaration of Vladimire Balarezo, at ¶ 7[1].

Similarly, Plaintiff also disputes the authenticity of his daily time cards. In his declaration, Plaintiff testified that he was required to work from one work order to another, and

---

[1] Sometime later, Defendants stopped using item "bonus" to adjust the artificial hourly earnings to conform to the actual piece rate earning based on the installations performed. For example, for the pay period from April 1 to April 14, 2007, Plaintiff earned $2,778.25 based on piece rate. See Exh. to Balarezo Decl.  On payroll, however, Plaintiff was reported to work 80 hours at regular rate of $7.5 per hour, and 42.5 hours at overtime rate of $11.25 per hour, resulting in total artificial hourly earnings of $1,078.13.  Exh. 4 to Balarezo Decl.  Adjustments were thus made in $1,069.93 for "piece work" compensation and "gas reimbursement", to make up the difference between the artificial hourly earnings and actual earnings based on piece rate, the payroll statement listed $1,069.93 in "piece work" and $640.20 in "gas reimbursement" (see id.), while in fact Plaintiff was not paid any amount for gas reimbursement in addition to the actual earnings based on piece rate shown on Exhibit 3.

Case No.C07-5243 JF

**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**
**Balarezo . v. NTH Connect Telecom Inc., et al.**

did not have time to take undisturbed 30-minute meal break during a workday as required by law. Although he did put down the 30-minute meal beak on his daily time cards[2], he was required to do so by Nth Connect management, regardless whether or not he indeed took required meal beaks. See Balarezo Decl., at ¶ 10.[3]

Given the authenticity of Plaintiff's payroll statements and timecards is in dispute, the Court should not consider these extrinsic documents when ruling on Defendants' motion to dismiss. Rather, the Court should take as true the facts pleaded in the Complaint, and deny Defendants' motion to dismiss.

**B. THE COURT SHOULD NOT CONSIDER PLAINTIFF'S PAYROLL STATEMENTS AND TIMECARDS BECAUSE THEY ARE NOT REFERRED TO IN THE COMPLAINT, AND ARE NOT CENTRAL TO THE COMPLAINT**

The Court should not consider Plaintiff's payroll statements and timecards because the complaint never refers to these extrinsic documents. In order for the Court to consider extrinsic documents when ruling on a motion to dismiss, these documents must be referred to in the Complaint. Marder v. Lopez, 450 F.3d 448. See also Branch v. Tunnel, 14 F.3d 449 (the complaint must allege the contents of the extrinsic document). Here, the Complaint does not refer to any of the Plaintiff's payroll statements nor his timecards. Nor does the Complaint allege any of the contents of the extrinsic documents that the Defendants want the Court to consider.

Nor are the extrinsic documents central to the Complaint. While Plaintiff's wage and hour claims will eventually base on such facts as the number of hours worked by Plaintiff, and

---

[2] Plaintiff has not researched, and thus is not addressing the issue, whether Plaintiff has voluntarily waived his right to meal periods because he indicated he took meal breaks on his daily timecards. This issue is not raised in Defendants' motion. Nor is Plaintiff addressing the issue whether the Defendants were liable for meal premium pay to Plaintiff as Defendants were not aware Plaintiff did not required meal breaks. If Defendants raise these new arguments in their reply brief, Plaintiff requests that he be given an opportunity to respond.

[3] The timecards on their face do not seem dubious of its credibility. From week ending November 4, 2006 to the week ending December 30, 2006, the timecards show that that Plaintiff would uniformly start working at 8:00 AM, ending his day at 5:00 PM or 5:30 PM every day during the week, and he would take meal breaks during the fixed time frame from 12:30 PM to 1:30 PM every single day during the week. This is virtually not possible, and hardly conforms to one's life experience.

whether or not he indeed took required meal breaks, these ultimate facts are not necessarily reflected on the extrinsic documents presented by the Defendants in this motion. In fact, Plaintiff is disputing these documents correctly reflect the reality of Plaintiff's employment, and will not rely on these documents in making his case.

Citing <u>Parrino</u>, Defendants argue that a district court may consider the extrinsic documents not refered to in the complaint. Apparently, Defendants misread <u>Parrino</u>, and misstate the law of this Circuit. In holding that district court in <u>Parrino</u> correctly considered the extrinsic ERISA plan, the Ninth Circuit court in <u>Parrino</u> heavily relied on the fact that First Amended Complaint there actually referred to the extrinsic documents at issue there, Parrino, at 146 F.3d 706.

Defendants further misstate the law of the Second Circuit regarding when a district court may consider extrinsic document in a Rule 12(b) motion. Contrary to the unattainable position taken by Defendants, the Second Circuit held that "a necessary prerequisite for that exception is that the plaintiff[] *rel[y]* on the terms and effect of [the] document in drafting the complaint . . .; mere notice or possession is not enough", <u>Global Network Communications, Inc. V. City of New York</u>,  458 F.3d 150 (2$_{nd}$ Cir. 2006) (original emphasis).  Defendants also misplaced their reliance on <u>Cortec Industries, Inc. V. Sum Holding L.P</u>. 949 F.2d 42 (2$_{nd}$ Cir. 1991) for a proposition that a court my consider extrinsic documents not referred to in the complaint in a Rule 12(b) motion.   It is clear that the Second Circuit approved the district court considering the extrinsic documents in <u>Cortec</u> case primarily because plaintiff there undisputedly relied upon such extrinsic documents to bring the lawsuit, making the documents integral to the complaint, <u>id.</u>, at 48.   Here, however, not only had Plaintiff not relied on the Plaintiff's false payroll statements and timecards in drafting the complaint, these extrinsic documents will never be an integral part of the Complaint as Plaintiff will ultimately disapprove the payroll statements and timecards presented by the Defendants.

1

2    **C.  THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS BECAUSE**
     **PLAINTIFF HAS STATED A VALID CASE FOR OVERTIME AND MISSED MEAL BREAK**
3    **PREMIUMS**

4

5          In his Complaint, Plaintiff alleges that he was employed as a pieceworker (Complaint, ¶

6    10). Although he regularly worked in excess of 8 hours a day and 40 hours a week (Complaint, ¶

7    11), he only received straight time and not overtime compensation from Defendants (Complaint

8    12).  In light of the regulations concerning the overtime compensation for the pieceworker under

9    29 C.F.R. §778.111[4], Plaintiff apparently has stated a valid cause of action for unpaid overtime.

     Similarly, Plaintiff has also stated valid claims for missed meal break premiums, and waiting
10
     time penalties under California Labor Code § 203. On the other hand, Defendants have failed to
11
     establish that Plaintiff will prevail in his claims under no set of facts.  As such, Defendants'
12
     motion to dismiss should be denied in its entirety.

13    **D.  DEFENDANTS HAVE FAILED TO SHOW ANY GOOD CAUSE TO CONVERT THIS RULE**
      **12 (B) MOTION TO DISMISS TO A RULE 56 MOTION FOR SUMMARY JUDGMENT**
14

15          When a court considers any extrinsic evidence outside of the Complaint in a motion to

16    dismiss, it has to convert the motion to dismiss to motion for summary judgment and give

17    Plaintiff a reasonable opportunity to controvert the evidence presented by Defendants. FED. R.

18    CIV. PRO. 12(d).  As such, the Court should direct Plaintiff to respond to the evidence presented

19    by the Defendants in this motion before ruling on this motion as a motion for summary

20    judgment.

21    _____

22    [4] 29 C.F.R. § 778.11provides:
          "When an employee is employed on a piece-rate basis, his regular hourly rate of pay is computed by
23        adding together his total earnings for the workweek from piece rates and all other sources (such as
          production bonuses) and any sums paid for waiting time or other hours worked (except statutory
24        exclusions): This sum is then divided by the number of hours worked in the week for which such
          compensation was paid, to yield the pieceworker's ''regular rate'' for that week. For his overtime work
25        the piece-worker is entitled to be paid, in addition to his total weekly earnings at this regular rate for all
          hours worked, a sum equivalent to one-half this regular rate of pay multiplied by the
          number of hours worked in excess of 40 in the week."

Furthermore, as this case is still at the early stage, Plaintiff is entitled to discovery for evidence to refute the evidence Defendants put forward before this Court in this motion. As such, there is no reason to convert this motion to a motion for summary judgment at this point.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants motion in its entirety.


Dated:  January 30, 2008                    By: /s/ Adam Wand_____.
                                            Adam Wang
                                                Attorney for Plaintiff